# UNITED STATES DISTRICT COURT
# FOR THE
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STEVEN B. BARGER, an individual, | Civil Case No. EDNY: 1:17-cv-04869-FB-LB |
| Plaintiff, | |
| -v- | Civil Case No. 1:18-mc-00010 |
| FIRST DATA CORPORATION, et al., | |
| Defendants, | |
| -v- | |
| JULIE K. KELLY, an individual, | |
| Third Party Witness. | |

2018 SEP -4 AM 9:02

### SUPPLIMENT TO REQUEST FOR PROTECTIVE ORDER (Docket #10)
### AND
### REPLY IN SUPPORT OF MOTION TO QUASH (Docket #4)

There are four outstanding motions in this proceeding. Motion to Compel [Docket #1], Motion to Quash [Docket #4], Motion for Sanctions [Docket #7], and Request for Protective Order [Docket #10]. All four should be ruled in my favor because all acts by First Data Corporation, Saul Ewing, Mr. Gary Eidelman, Ms., Gillian Cooper and Mr. Matthew Byrne are in bad faith, designed to harass, annoy, intimidate and burden me, and for the improper purposes of fishing for evidence in my claims against First Data. None of their acts are for purposes of gathering information for the *Barger v. First Data*. I am a third-party, non-party to the litigation between Plaintiff Barger and First Data Corporation. I was merely a subordinate of Plaintiff Barger at First Data and I have no relevant information about employment decisions made by First Data with regards to Mr. Barger.

1

All four motions should be ruled in my favor because of the overwhelming pattern of improper conduct by First Data in attempting to depose me and collect documents from me in bad faith for improper purposes. The bad faith acts are as follows:

1. I was never told that I was on First Data's *Barger* 26(a) disclosures, created in November 2017. They are trying to compel me, their own witness when they could have asked for a declaration. My name remains on their 26(a) disclosure with Mr. Eidelman and Ms. Cooper listed as my lawyers.
2. Saul Ewing now attempts to disclaim ever having been my lawyers.
3. Noticing a deposition for me on May 23, 2018 in direct retaliation of my having raised ADA & Title VII claims against First Data.
4. Use of a process server disguised as a FedEx delivery man to serve me and upset my children.
5. They did not / have not issued a cancellation on the first subpoena or the first deposition.
6. Plaintiff Barger's counsel did not / has not been informed that the first deposition was cancelled (see Shaw Shearer Declaration attached to Motion to Quash)
7. I appeared for my first deposition on June 25, 2018. No one from First Data, Saul Ewing, showed for their non-noticed deposition.
8. Mr. Eidelman inexplicably lies and defames me on the record in front of First Data employees (including First Data's inhouse attorney, Jill Poole who responded when I raised my own claims against First Data) by falsely stating I did not show (see Shawn Shearer declaration attached to Motion to Quash) for my June 25, 2018 date.

9. Mr. Eidelman's refuses to recant his statements when presented with evidence that I did show on June 25, 2018.

10. Saul Ewing's filing of First Data's position statement with the OCRC the same day Ms. Cooper tries to contact me as my lawyer regarding my Barger deposition.

11. The drastic expansion of the scope of discovery in the second subpoena

12. The new and expanded subpoena is not part of the results of the hearing on August 14, 2018.

13. The clear intention to use the August 31 date for the improper purpose of a "fishing expedition" for my case against First Data.

14. The appearance of Ms. Cooper and Ms. Ording on August 31, 2018 solely to harass and intimidate me in my own claims. Ms. Ording knows of my anxiety and stress conditions and her denial of my ADA accommodation is the basis of my OCRC claim. Ms. Ording deliberately made an appearance to trigger my known anxiety which forces me to go to my physician.[1]

The *Barger* subpoena is issued by the EDNY. As an Ohio resident, I am asking to have the subpoena quashed because it is abusively extensive and overbroad, and obviously is intended primarily to harass me for bringing claims against First Data in my case and for gathering

---

[1] Ms. Gillian Cooper is not licensed in Ohio. She came into Ohio sponsored, and abused her privilege to practice here by clearly demonstrating that she was her for a fishing expedition into my own claim against First Data Corporation by bringing the individual primarily responsible for the conduct on which my claims before the OCRC are based as corporate representative (Robin Ording) for my deposition.[1] Ms. Gillian Cooper and Ms. Robin Ording are the two people whose conduct is the direct cause of my own claims of discrimination and retaliation under the ADA and Title VII. Robin Ording has nothing to do with the *Barger v. First Data* case, which my deposition was to discuss, and Ms. Cooper has been the attorney responsible for harassing me through this subpoena process for brining my claims in my own case before the OCRC.

3

information for use in my future case that will be brought before this Ohio Federal court. I am asking that the Court use its position to tell Ms. Cooper to stop abusing her privileges in the State of Ohio with manipulating tactics issuing subpoenas with improper purposes and attempting to get a head-start on discovery in my case against First Data before I have even received my right-to-sue letter to commence my litigation against First Data before this Court.

To understand the reasons for my resistance to providing deposition testimony and document discovery in the *Barger* case, the Court should understand my background with Defendant First Data and Plaintiff Barger.

I. **Factual Background – Kelly Employment by First Data & Claims of Discrimination**

I was employed by First Data for 20 years (my only employer for my entire adult professional life). My final two supervisors were Plaintiff Barger and then Ms. Ording. Plaintiff Barger was my supervisor from the summer of 2014 through November 2016. In November 2016, Plaintiff Barger took FMLA leave to recover from cancer surgery (the subject matter of the *Barger v. First Data* case) and Ms. Ording was appointed his "interim" replacement. Mr. Barger was terminated before he could return from leave and Ms. Ording became my permanent supervisor and was through my last day of work on November 30, 2017.

On May 18, 2018 I filed a Charge of Discrimination with the OCRC, and on July 18, 2018 I filed an Amended Charge of Discrimination with the OCRC. **Exhibit A** & **Exhibit B**. In the first Charge, I raised complaints that my termination of employment violated the ADA, Title VII and the PDA. In the Amended Charge, I added allegations that the conduct of First Data and Saul Ewing in seeking discovery from me in this *Barger* case was also a violation of those laws as

4

continuing retaliation raising my initial claims with the OCRC. The complete factual background is described in **Exhibit A**. Below is a summary of those facts.

I worked for First Data almost exclusively from my home beginning in 2004 or 2005. I have twins, age 5, and a son, age 3. My pregnancy with the twins was difficult. Following their birth, I suffered from medical complications from delivery, including post-partum depression, elevated blood pressure, anxiety, and other physical ailments and have been treated for continuing after-effects ever since their birth. The twins were born in December 2012. I returned to work in March 2013 and continued to work from home. The birth of my son in February 2015 also was complicated. At only 38 weeks of gestation, he was born by scheduled c-section and was in the NICU due to underdeveloped lungs, and he was born with a vascular malformation that required immediate attention and numerous appointments to the Children's Hospital Hemangioma and Vascular Malformation Center in Cincinnati. My c-section scar became significantly infected causing my hospitalization and near death. I also suffered from blood infection, post-partum depression, severe recti diastasis, and umbilical hernia.

I returned to work in April 2015. First Data had recently changed its policy to prohibit work from home. This policy began to be enforced during the spring of 2015. I had a new, sick infant, and the twins were not yet 3-years old, my elderly mother-in-law required care in my home, and I cared for my learning-disabled brother. The policy change required me to go into the office (1.0 hour drive each way). The Cincinnati office was small and housed only 35 First Data employees, none of whom were in the same work group as me and my job did not require personal interaction with them. Because of this new policy and its effects on my health, and my family's health, in April 2015, I wrote a resignation letter to my then supervisor Mr. Barger. Mr.

Barger, who was located in Atlanta, and I, located in Cincinnati, conducted business by phone, video, and e-mail when working together. Mr. Barger refused my resignation and he talked with me, encouraged me to stay, and granted me an accommodation under the ADA to work from home despite the new policy. I worked from home the entire time I reported to Mr. Barger.

In the spring and summer of 2016, I was again hospitalized with continuing anxiety and panic disorders. Mr. Barger was completely understanding of my situation, checking in on me daily and he allowed me to continue to work remotely while my health was recovering.

When Ms. Ording became my supervisor in November 2016, she revoked the work from home accommodation granted by Mr. Barger and I was forced to begin the daily commute to the office for no reason (my work was world-wide and by phone and computer whether in an office or not). Ms. Ording was aware of my medical conditions (physical and mental) but insisted that she would be enforcing company policy and would not be continuing my ADA accommodation. Over the next year under Ms. Ording created an atmosphere even more oppressive and abusive given my medical conditions and she refused to grant any accommodations despite our conversations. The environment became so oppressive and my medical conditions (stress, anxiety, blood pressure, etc.) worsened. I was constructively discharged by Ms. Ording's noncompliance with the law and my employment with First Data ended in November 2017.

I raised complaints that I had been terminated in violation of the ADA, Title VII and the PDA. The proximity of time between my complaints made in my case against First Data, and

First Data's actions against me in the *Barger* case is telling (these facts and supporting documents are outlined in my Reply to First Data's position statement attached as **Exhibit C**)[2].

My attorney demanded a settlement of my claims before we filed a Charge of Discrimination (May 3rd), and **seven days later** First Data served my attorney notice of intent to issue the First Subpoena in *Barger* (May 10th). I filed my Charge of Discrimination (May 16th)(**Exhibit A**), and **seven days later** I was served with the first third-party subpoena in *Barger* by the fake FedEx deliveryman (May 23rd). I filed my Amended Charge of Discrimination (July 18th)(**Exhibit B**), and **five days later** First Data filed its Motion to Compel in *Barger* (July 23rd). These retaliatory acts are in addition to Ms. Cooper's unethical conduct on July 3, 2018 on which she both wrote me acting as my attorney to discuss the Barger deposition and she filed First Data's position statement against me with the OCRC.

From this timing, it is obvious that the subpoenas in *Barger* have been designed solely to harass and retaliate against me for my raising claims with the OCRC.

## II. Procedural Background

### A. First Third-Party Subpoena – Appearance on June 25, 2018

On May 23, 2018, I was served a subpoena ("First Subpoena") by First Data to provide deposition testimony (**no** document production) on June 25, 2018 as a third-party witness in this case, *Barger v. First Data*. The process server impersonated a FedEx employee and scared my small children by serving me a subpoena and not delivering the decoy package he held in his

---

[2] The Exhibits to the Reply attached as Exhibit C hereto are voluminous – 405 pages. Those exhibits that are already within the Court's records or not relevant to have been excluded, but can be produced and filed upon request.

7

arms. I advised First Data's lawyers (Mr. Eidelman and Ms. Cooper of Saul Ewing)[3] that June 25, 2018 would not work because I had childcare issues. I was told in writing by Mr. Eidelman that First Data would pay for childcare, so I rearranged my schedule and I appeared on June 25, 2018 expecting to give my deposition I and brought my children expecting childcare to be available. No one was there to take my deposition. First Data and Saul Ewing violated Rule 30(g) by no-showing their own noticed deposition.

### B. First Data's Motion to Compel - Kelly's Motion to Quash & Motion for Sanctions

First Data filed a Motion to Compel my deposition testimony. [Docket #1] I filed a Response to the Motion to Compel [Docket #3] and a Motion to Quash the subpoena [Docket #4]. I argued that I could not be compelled to do what I had already done – comply with the First Subpoena by appearing at the designated time and place on June 25, 2018. My appearance fulfilled my one-day deposition obligations under Rule 30(d)(1) and I should not be compelled to appear again for a second deposition.

I was confused by Saul Ewing's aggression against me by filing the Motion to Compel because I had been told that I was listed on First Data's Rule 26(a) disclosures as their witness in *Barger v. First Data* and that could only be contacted by Plaintiff's counsel through Saul Ewing. All indications were, and I believed, Saul Ewing was serving as my counsel in *Barger*.

A telephonic hearing on the Motion to Compel was held on August 14, 2018 – Ms. Cooper conducted the proceeding in violation of Local Rule 83.3(e). In that hearing I agreed, but

---

[3] [I have also communicated with Mr. Levin (managing partner) and Mr. Callahan (general counsel) of Saul Ewing regarding Saul Ewing's violation of its ethical obligations to me as a client or as a former client by taking adverse position against me in favor of First Data while purporting to represent me in the Rule 26(a) disclosures in the *Barger v. First Data* case.]

8

was not ordered, to appear for a deposition on August 31, 2018 between 12:00 and 4:00. The Court did not decide the Motion to Compel, the Motion to Quash or Motion for Sanctions [Docket #7]. By Minute Entry on August 14, 2018, the Court directed "Ms. Kelly's motion for sanctions will be briefed and all motions will be formally ruled upon once briefing is complete."

### C. Second Third-Party Subpoena

On August 20, 2018, I received by USPS a second subpoena from First Data ("Second Subpoena"). The Second Subpoena required me to give deposition testimony on August 31, 2018 and for me to produce 16 categories of documents at the time of appearance. The Second Subpoena was significantly more expansive that the First Subpoena. The document categories included requests for documents and communications with my counsel prepared in connection with my own discrimination complaints against First Data. The Second Subpoena was not at all consistent with my understanding of what transpired on the Court's telephone conference.

### D. Request for Sanctions & Request for Protective Order

On August 29, 2018, 15-days after the filing of my Motion for Sanctions, I filed a Request for Order Granting Motion for Sanctions [Docket #8]. I requested non-monetary sanctions in the form of (i) a protective order prohibiting my deposition and production under the subpoenas; (ii) disqualification of Saul Ewing from representation of First Data in my case pending before the Ohio Civil Rights Commission (OCRC) alleging First Data violated the ADA, Title VII, and the Pregnancy Discrimination Act; (iii) prohibiting Saul Ewing from representing First Data in any case I may bring in this Court for at least the next 24 months; (iv) an apology to my children by Mr. Eidelman and Ms. Cooper for their failure to appear as noticed on June 25th and using a fraudulent FedEx delivery man to serve me at night when the children were home;

9

and (v) such other sanctions that the court would find necessary. I also raised the question of the ethical conduct of Saul Ewing representing to be my lawyers in their 26(a) disclosure in the *Barger* case and then taking adverse action against me on behalf of First Data before the OCRC.

### E. August 31, 2018 – Request for Protective Order

On August 31, 2018, at 11:05 a.m., I filed a Request for a Protective Order seeking that the Court (i) prohibit my deposition on August 31st and (ii) prohibiting the production of documents in the Second Subpoena.

I did not appear for the deposition for several reasons, including: (i) if the deposition had proceeded, the Request for a Protective Order would have been moot: (ii) I had realized that Ms. Robin Ording was going to attend my deposition – primarily to intimidate me again and to gather information for use in my OCRC complaint and my future case against First Data when I receive my right-to-sue letter (Ms. Ording is a VP of First Data, and she was my final supervisor at First Data. She also is the primary officer at First Data that I have accused of creating a hostile environment and revoking my ADA accommodation in my OCRC complaint, and she is the primary defense witness for First Data who has already supplied a sworn statement to the OCRC that I am not permitted to see under Ohio law); (iii) the document production requests was seeking information related to my pending complaint against First Data, and from Ms. Ording being present the deposition was primarily to seek and "fish" for information for my case and not gather information for the *Barger* case; and (iv) it was clear that First Data's and Saul Ewing's conduct in attempting to obtain discovery from me is just a continuation of the months long retaliation against me for raising my claims before the OCRC.

10

When I realized Ms. Ording was going to attend my deposition on August 31, 2018, my anxiety became overwhelming and I chose not to attend and contacted my physician and went to his office. **Exhibit D**. I advised defense counsel that I was under the care of a physician by e-mail at 1:45 p.m. on August 31, 2018. I have since learned that both Ms. Cooper and Ms. Ording were at the scheduled deposition. Ms. Cooper and Ms. Ording have been the primary harassers. Both Ms. Cooper and Ms. Ording will be witnesses in my claims for before the OCRC. Saul Ewing also will likely be a defendant for intentional infliction of emotional distress when I bring my causes of action after receipt of my right-to-sue letter.

First Data's and Saul Ewing's choice to send both Ms. Cooper and Ms. Ording to my deposition shows nothing but a blatant intent to harass and intimidate me in my case. Ms. Ording has little or no relevance to the claims in *Barger*, but she has the utmost importance and relevance to my claims against First Data. This choice of attendees also shows that the August 31, 2018 deposition was not designed to conduct discovery in the *Barger* case, but was designed to be a "fishing expedition" in my case.

The Second Subpoena did not seek information within the scope of Rule 26(b)(1) for the *Barger* case. As outlined in my Motion for Protective Order, the Second Subpoena was served for an improper purpose, was unduly burdensome, did not seek relevant evidence for the *Barger* case, sought documents and evidence already in First Data's possession, sought attorney-client privileged information in connection with my claims, and the benefit of my compliance with the subpoena for discovery in the *Barger* case is significantly outweighed by the burden and unfair implications for me and my claims against First Data.

11

The harm to me and prejudice to my claims from being compelled, especially given the historical and recent intended attempts to harass and intimidate, outweighs any benefit to First Data's discovery for purposes of the *Barger* case. *Serrano v. Cintas Corp.*, 669 F.3d 884 (6th Cir. 2012); *York v. American Medical Systems*, 166 F.3d 1216 (6th Cir. 1998). First Data's attempts to force my deposition in *Barger* is a subterfuge for conducting discovery in my case before I have even received my right-to-sue letter. The playing field is uneven. First Data is trying to conduct discovery in my case before I can even file litigation against them. First Data should be prohibited from doing so when I have no relevant evidence to offer in *Barger* that cannot be obtained from First Data's own files and employees.

## CONCLUSION

For these reasons and those contained in my previous filings, (Motion to Quash, Motion for Sanctions, Request for Sanctions Order, and Request for a Protective Order) the Court should:

(i) Deny First Data's Motion to Compel [Docket #1],
(ii) Grant my Motion to Quash the First Subpoena and Second Subpoena [Docket #4],
(iii) Grant my Motion for Sanctions [Docket #7], and
(iv) Grant my Request for Protective Order [Docket #10].[4]

Thank you,

/s/ Julie K. Kelly
Julie K. Kelly
823 Dorgene Lane
Cincinnati, OH 45244

*Pro Se, Third Party Witness*

---

[4] If the Court determines that a deposition must be conducted, I request that the Court prohibit Ms. Robin Ording from attending that deposition, and should prohibit Ms. Cooper and Mr. Eidelman from conducting my deposition because they are not permanent members of this Court and have not been admitted *pro hac* in this Court for the *Barger v. First Data v. Kelly*.

**CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this **SUPPLIMENT TO REQUEST FOR PROTECTIVE ORDER (Docket #10) AND REPLY IN SUPPORT OF MOTION TO QUASH (Docket #4)**: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the **SUPPLIMENT TO REQUEST FOR PROTECTIVE ORDER (Docket #10) AND REPLY IN SUPPORT OF MOTION TO QUASH (Docket #4):** otherwise complies with the requirements of Rule 11.

September 4 , 2018

/s/ Julie K. Kelly
*Pro Se*
Julie K. Kelly
823 Dorgene Lane
Cincinnati, OH 45244
(P) 513.806.4893
(e) jul_kelly@mac.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2018, a copy of the foregoing document was delivered to the Clerk of Court for filing in the Court's electronic filing system (CM/ECF), which will send electronic notification of such filing to all parties represented by attorneys who are registered CM/ECF users.

September 4 , 2018

/s/ Julie K. Kelly
Pro Se
Julie K. Kelly
823 Dorgene Lane
Cincinnati, OH 45244
(P) 513.806.4893
(e) jul_kelly@mac.com